Michael E. Waller (MW 2155)
Mark S. Morgan (MM 8799)
**KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP**
One Newark Center, 10th Floor
Newark, New Jersey 07102
Tel: 973-848-4000
Fax: 973-848-4001
*Attorneys for Plaintiff
Association Headquarters, Inc.*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ASSOCIATION HEADQUARTERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> USENIX ASSOCIATION and SYSTEMS ADMINISTRATORS GUILD, a Special Technical Group of USENIX Association, <br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff, Association Headquarters, Inc., by its attorneys, Kirkpatrick & Lockhart Nicholson Graham LLP, as and for its Complaint against USENIX Association and Systems Administrators Guild, a Special Technical Group of USENIX Association, Defendants herein, allege as follows:

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is diversity between the parties.

1

2. Venue is proper pursuant to 28 U.S.C. § 1391(a).

## PARTIES

3. Plaintiff Association Headquarters, Inc. ("AH") is a corporation organized under the law of the State of New Jersey with a principal place of business located at 15000 Commerce Parkway, Suite C, Mount Laurel, New Jersey 08054. AH offers full-service and project-based management for various associations and societies.

4. Defendant USENIX Association ("USENIX") is a corporation organized under the laws of the State of Delaware with a principal place of business located at 2560 Ninth Street, Suite 215, Berkeley, CA, 94710.

5. USENIX is an association comprised of engineers, system administrators, scientists, and technicians working in the field of computing.

6. Systems Administrators Guild ("SAGE") is a Special Technical Group operating within the USENIX organization ("STG") serving those involved in computer systems administration as a profession.

## ALLEGATIONS COMMON TO ALL COUNTS

7. SAGE is a Special Technical Group ("STG") operating through and within the USENIX organization.

8. At all times relevant herein, SAGE represented itself as having the actual and apparent authority to enter into contracts on behalf of USENIX.

9. SAGE is managed by an Executive Committee of seven people elected every two years by the SAGE membership.

10. Upon information and belief, the SAGE Executive Committee includes certain employees, officers and/or directors of USENIX all of whom routinely report to the USENIX Board of Directors.

11. SAGE's membership represents approximately 60% of the USENIX membership.

12. At all times relevant to the allegations of this Complaint, individuals interested in joining SAGE were required by USENIX to join both USENIX and SAGE.

13. Membership dues for USENIX and SAGE are paid annually.

14. USENIX and SAGE are co-sponsors of the Large Installation Systems Administration ("LISA") conference.

15. Although USENIX manages all conference logistics, SAGE receives a distribution of LISA conference profits each year.

16. USENIX performs both front office and back office functions for SAGE.

17. In or about 2004, USENIX sought to organize SAGE as a separate and independent legal entity.

18. On June 27, 2005, the USENIX Board of Directors voted to authorize a plan providing for the separation of SAGE.

19. The separation plan (the "USENIX Separation Plan") consisted of a three (3) step process that would lead to SAGE's separation over time.

20. As a part of the USENIX Separation Plan, USENIX agreed to provide certain funding to SAGE during the separation period.

21. Additionally, as part of the Separation Plan, USENIX was to transfer the rights to the SAGE name, and agreed to share income for the LISA conference with SAGE for several years.

22. USENIX appointed an operational committee consisting of USENIX officers, directors and/or employees charged with the task of overseeing SAGE's transition to an independent legal entity pursuant to the USENIX Separation Plan.

23. Upon information and belief, the operational committee responsible for SAGE's transition consisted of, among others, Geoff Halprin and Tom Perrine.

24. At all times relevant to the allegations of this complaint, Geoff Halprin served as an officer, director and/or employee of USENIX.

25. At all times relevant to the allegations of this complaint, Tom Perrine was President of SAGE and a member of USENIX.

26. At all times relevant to the allegations of this complaint, Geoff Halprin and Tom Perrine were delegated actual and/or apparent authority to actively participate in the operational committee's transition of SAGE to an independent entity.

27. As a part of the transition process, SAGE published a Request for Proposal ("RFP") to elicit proposals from various management companies to assist SAGE with the management of SAGE after it became a separate and independent legal entity.

28. The RFP was published with USENIX's knowledge.

29. The RFP was published with USENIX's authority.

30. The RFP was published on the website of the International Association of Association Management Companies ("IAAMC") which has over two-hundred

4

management companies as members, each of which were afforded the opportunity to submit a proposal in response to the RFP.

31. The SAGE RFP set forth the material terms of SAGE's proposal for management services including its mission, services and activities, and organizational structure.

32. The SAGE RFP neither discusses the USENIX Separation Plan nor does it condition any management agreement upon the approval of the USENIX Board of Directors.

33. In response to SAGE's RFP, AH submitted a proposal which was accepted by SAGE.

34. Following acceptance of the AH proposal, the parties entered into a formal Management Agreement dated September 1, 2005. A true and accurate copy of the AH/SAGE Management Agreement is annexed hereto as Exhibit "A".

35. The Management Agreement does not condition performance of any of its obligations on approval by the USENIX Board of Directors.

36. The Management Agreement describes the role AH will play in terms of leadership, executive committee's cultivation, SAGE management and marketing.

37. At no point was AH retained to assist SAGE with fulfilling the three (3) step USENIX Separation Plan.

38. The initial term of the Management Agreement is July 1, 2005 through December 31, 2007. SAGE and AH could renew the Management Agreement for additional years at any time prior to the expiration of the contract. Exhibit A ¶ 12.

39. In consideration for the services outlined in the Management Agreement, AH was to be paid, in equal monthly installments, an annualized management fee of $144,400 beginning September 1, 2005 and ending on December 31, 2006. Exhibit A at ¶ 6.

40. Given that the Management Agreement was a multi-year contract, renewal beyond the initial term was expected to bring an increase in the annualized management fee.

41. The Management Agreement provides that for 2005, SAGE will be billed management fees totaling $48,000 or four twelfths of the management fee for the remainder of the year). Exhibit A at ¶ 6.

42. For the months of July and August (transition months), AH was to be paid a monthly management fee of $12,000 per month. Exhibit A at ¶ 6.

43. At all times relevant herein, SAGE represented that it was to be initially funded by USENIX.

44. Notwithstanding the requirements of the USENIX Separation Plan, SAGE never became a separate and independent legal entity and remained a Special Technical Group of USENIX.

45. SAGE unilaterally and improperly terminated the Management Agreement.

46. Following SAGE's improper termination of the Management Agreement, on May 19, 2006, AH made a demand upon both SAGE and USENIX for the outstanding sums owed to it under the Management Agreement.

6

47. USENIX refused to honor the Management Agreement individually and on behalf of SAGE.

48. USENIX and SAGE failed to comply with their obligations of the Management Agreement.

49. In recognition of SAGE's obligations to AH, USENIX partially paid AH for certain expenses it incurred in managing SAGE affairs.

50. USENIX is equally responsible for all fees and damages resulting from SAGE's improper termination of the Agreement.

### FIRST COUNT
### (Breach of Contract)

51. AH repeats and re-alleges each and every allegation of paragraphs 1 through 50 as if fully set forth herein.

52. Pursuant to the Management Agreement, AH has performed under its obligations to provide various management services to SAGE.

53. Under the Management Agreement, SAGE is obligated to pay AH for those services provided to it by AH.

54. In breach of the Management Agreement, SAGE has failed and/or refused to pay AH for those services.

55. SAGE's breach of the Management Agreement has caused AH to lose monies to which it is entitled.

56. SAGE is responsible for the damages resulting from its failure to satisfy its contractual obligations under the Management Agreement.

7

57. As a direct and proximate result of the aforesaid breach, SAGE and USENIX are liable to AH for damages in an amount yet to be ascertained, together with the costs and disbursements of this action, including but not limited to, reasonable attorneys' fees, and pre-judgment and post-judgment interest.

WHEREFORE, AH demands judgment in its favor against SAGE and USENIX as follows: (a) requiring SAGE and USENIX to pay AH those amounts required under the Management Agreement for the services provided by AH; (b) for costs of this suit; and (c) for such other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.

## SECOND COUNT
### (Negligent Misrepresentation)

58. Plaintiff restates and re-alleges the allegations of paragraphs 1 through 57 as if fully set forth herein.

59. SAGE and USENIX represented to AH that the Request for Proposal included all the material terms and conditions for which any contract would be executed.

60. The facts as represented by SAGE and USENIX were inaccurate.

61. At the time SAGE and USENIX made the aforementioned representations, they knew, or had reason to know, that AH would rely on their representations.

62. At the time AH began negotiations with SAGE and USENIX concerning AH's engagement for management services, SAGE and USENIX had actual knowledge that the AH contract was conditioned upon approval by the USENIX Board of Directors and satisfaction of the USENIX Separation Plan.

63. SAGE and USENIX intended for AH to rely on their representations and/or negligently failed to inform AH that they would terminate the Management

8

Agreement if USENIX ultimately prevented SAGE from becoming a separate legal entity from USENIX.

64. AH did in fact rely upon SAGE's and USENIX' representations and has suffered damages as a result.

WHEREFORE, AH demands judgment in its favor against SAGE and USENIX as follows: (a) requiring SAGE and USENIX to pay AH those amounts required under the Management Agreement for the services provided by AH; (b) for costs of this suit; and (c) for such other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.

### THIRD COUNT
### (Fraud in the Inducement)

65. Plaintiff restates and re-alleges the allegations of paragraphs 1 through 64 as if fully set forth herein.

66. SAGE and USENIX needed a management company to provide management services to its organization. As a result of this need, SAGE and USENIX published a Request for Proposal for a management company.

67. SAGE and USENIX knew that the engagement of a management company by SAGE was conditioned upon approval of the USENIX Board of Directors and satisfaction of the USENIX Separation Plan. However, SAGE and USENIX intentionally did not inform AH of these conditions.

68. When AH discussed the terms of the contract and the Request for Proposal with SAGE and USENIX they represented that the AH contract would be executed imminently and that no other conditions would need to be satisfied. This representation was false.

9

69. SAGE and USENIX made the false representations to induce AH to rely on such representations.

70. AH reasonably believed the false representations by SAGE and USENIX and began management services based thereon.

71. In reliance on the false representations by SAGE and USENIX, AH began to provide management services.

72. Contrary to the representations made to AH by SAGE and USENIX, SAGE and USENIX subsequently declared they would not fulfill their obligations under the Management Agreement, and failed to pay AH its fair compensation for the services it provided pursuant to the Management Agreement.

73. AH has been damaged by its reliance on the misrepresentations made by SAGE and USENIX.

WHEREFORE, AH demands judgment in its favor against SAGE and USENIX as follows: (a) requiring SAGE and USENIX to pay AH those amounts required under the Management Agreement for the services provided by AH; (b) for costs of this suit; and (c) for such other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.

### FOURTH COUNT
**(Quantum Meruit)**

74. Plaintiff restates and re-alleges the allegations of paragraphs 1 through 73 as if fully set forth herein.

75. AH began providing management services to SAGE based upon SAGE's and USENIX's representations that AH would enter into a formal Management Agreement.

10

76. The management services AH rendered had substantial value on the open market, were valuable to AH, and were of the type and caliber for which there is a reasonable expectation of compensation.

77. SAGE and USENIX accepted AH's services, knowing that they were not gratuitous and that AH be compensated for its services.

78. SAGE and USENIX accepted the benefit of AH's services, but has failed and/or refused to adequately compensate AH for the services it rendered. AH has thus been damaged as a result.

79. In recognition of this obligation, USENIX paid a fraction of the expenses incurred by AH.

80. USENIX has failed to pay the amounts due and owing pursuant to the Management Agreement.

WHEREFORE, AH demands judgment in its favor against SAGE and USENIX as follows: (a) requiring SAGE and USENIX to pay AH those amounts required under the Management Agreement for the services provided by AH; (b) for costs of this suit; and (c) for such other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.

## FIFTH COUNT
**(Tortious Interference as to USENIX)**

81. Plaintiff restates and re-alleges the allegations of paragraphs 1 through 80 as if fully set forth herein.

82. USENIX, improperly and without privilege or justification, unlawfully interfered with AH's existing contractual and business relationship with SAGE.

83. USENIX failed to, among other things, approve SAGE's separation from USENIX and, consequently, prohibited SAGE from meeting its obligations under the Management Agreement.

84. The foregoing conduct was willful, intentional and calculated to cause damage to AH, and has already caused damage to AH.

85. USENIX's tortious interference with AH's existing contractual and business relationship with SAGE has injured AH in an amount to be determined at trial.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

          **KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP**
          Attorneys for Plaintiff
          Association Headquarters, Inc.


          By: /s/ **Michael E. Waller**
               Michael E. Waller (MW 2155)
               Mark S. Morgan (MM 8799)

Dated: September 19, 2006

## CERTIFICATION UNDER L. Civ. R. 11.2

I, Michael E. Waller, hereby certify that I am a member of the law firm of Kirkpatrick & Lockhart Nicholson Graham LLP, attorneys for Plaintiff Association Headquarters, Inc., and that the matter in controversy in this case is not the subject of any other court, arbitration, or administrative proceeding.

I certify that the foregoing statements by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

By: /s/ **Michael E. Waller**_____
Michael E. Waller (MW 2155)

Dated: September 19, 2006

Michael E. Waller (MW 2155)
Mark S. Morgan (MM 8799)
**KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP**
One Newark Center, 10th Floor
Newark, New Jersey 07102
Tel: 973-848-4000
Fax: 973-848-4001
*Attorneys for Plaintiff
Association Headquarters, Inc.*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ASSOCIATION HEADQUARTERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> USENIX ASSOCIATION AND SYSTEMS ADMINISTRATORS GUILD, an Special Technical Group of USENIX Association, <br><br> Defendants. | Civil Action No. <br><br> **PLAINTIFF'S RULE 7.1 STATEMENT** |

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, the undersigned counsel for plaintiff Association Headquarters, Inc. (private non-governmental parties) certifies that there is no parent corporation or publicly held corporation that owns 10% or more of defendants' respective stock.

                **KIRKPATRICK & LOCKHART
                  NICHOLSON GRAHAM LLP**


              By: /s/ **Michael E. Waller**
                 Michael E. Waller (MW 2155)

Dated: September 19, 2006

14

## CERTIFICATE OF SERVICE

I, MARK S. MORGAN herby certify and say:

1. I am a member of the Bar of this Court and am associated with the law firm of Kirkpatrick & Lockhart Nicholson Graham LLP, attorneys for Plaintiff Association Headquarters, Inc.

2. On September 19, 2006, I caused a true copy of the foregoing Summons, Civil Cover Sheet, Plaintiff's Complaint and Jury Demand, Rule 7.1 Disclosure Statement, and the herein Certification of Service, to be filed with the United States District Court for the District of New Jersey via the Electronic Court Filing system.

/s/ **Mark S. Morgan**
Mark S. Morgan (MM 8799)

Dated: September 19, 2006